W. O. McElroy, Receiver of the Bank of Colfax, Appellee, v. H. B. Allfree, Administrator of the Estate of George D. Wood, Deceased, Appellant.

**Evidence:** TRANSACTIONS WITH A DECEDENT. In a proceeding to 1 establish against the estate of a deceased bank official a claim for funds of the bank misappropriated by decedent and another person, and for which notes of such other person alone were taken payable to the bank, the maker thereof is held to have been an incompetent witness to the transactions with decedent, under Code, Section 4604.

**Estates of decedents:** CLAIMS: EVIDENCE. In an action to establish 2 a claim against the estate of a deceased bank official, for funds of the bank misappropriated by him, the evidence is held sufficient to authorize the allowance of the claim.

**Partnership:** MARSHALLING OF ASSETS: RIGHTS OF FIRM CREDITORS.
3  Where one member of a banking firm fraudulently appropriates funds of the bank, the doctrine of marshalling of assets has no application, and his private creditors have no preference over the crditors of the firm of which he was a member.

*Appeal from Jasper District Court.*— HON. BYRON W. PRESTON, Judge.

WEDNESDAY, JUNE 13, 1906.

REHEARING DENIED THURSDAY, SEPTEMBER 27, 1906.

THIS is a proceeding in probate for the allowance of a claim against the estate of George D. Wood, deceased. Defendant answered by a general denial. The trial court allowed the claim in full, and defendant appeals.— *Affirmed.*

*Henry Silwold* and *Dudley & Coffin,* for appellant.

*McElroy & Cox* and *Carr, Hewitt, Parker & Wright,* for appellee.

DEEMER, J.— George D. Wood before his death was the cashier of and had the exclusive management of what was known as the " Bank of Colfax," a co-partnership composed of George D. Wood and Alexander Wood, engaged in the banking business at the town of Colfax. Plaintiff is the receiver of the co-partnership; and defendant, the administrator of George D. Wood's estate. It is claimed that George D. Wood, while acting as cashier and managing officer of the partnership, which we shall hereafter call the bank, wrongfully, fraudulently, carelessly, and negligently, without the consent of his partner, and in excess of his authority, withdrew from said bank more than $100,000 in money, which was used by him and one Fellows in grain speculation and converted to his and their own use; that notes for the amount or a part thereof were taken from Fellows who was then as

now insolvent, which was well known to the cashier, and that by reason of said wrong, fraud, and conversion, plaintiff is entitled to have the amount withdrawn established as a claim against decedent's estate.  It is further claimed that deceased purchased shares of stock for the bank from Fellows for the sum of $3,500, and that he caused the amount paid therefor to be entered upon the books of the bank as $5,000, and wrongfully took and converted of the assets of the bank the sum of $1,500.  It is admitted that Fellows executed seventeen notes to the bank, aggregating more than $87,000, and it is claimed by plaintiff that these were not executed in good faith but for the purpose of covering up Wood's peculations and speculations.  The trial court allowed, practically the full amount of plaintiff's claim, and this appeal followed.

I.  Three propositions are now relied upon for a reversal. The first is that Fellows, who was a witness for plaintiff, was and is an incompetent one under section 4604 of the Code,

1. Evidence: transactions. with a decedent. for the reason that he was interested in the event of the suit, which is against Wood's administrator, and cannot, therefore, be heard to give testimony as to any personal transaction or communication with said Wood, who is now deceased; second, that without Fellows' testimony there is not sufficient to justify the establishment of the claim; third, that there should be a marshaling of the assets of the Wood estate, and his private creditors should be preferred over those of the creditors of the firm of which he was a member.  As Fellows alone made notes to the bank for money, which it is claimed was ab-. stracted by Wood, it is mainfest that he is interested in having the amount thereof allowed against Wood's estate.  No amount of argument can add anything to the mere statement of the proposition.   But see *Curd v. Weisser,* 120 Iowa, 743; *Benton Co. Bank v. Strand,* 106 Iowa, 606; *Campbell v. Cole,* 89 Iowa, 213; *Giesecke v. Seevers,* 85 Iowa, 688; *Wormlley v. Hamburg,* 40 Iowa, 25; *Martin v. Shannon,* 92 Iowa, 377.   Fellows' testimony was taken subject to objec-

tion, and no further ruling was ever called for or made by the trial court; hence there is nothing to consider upon this proposition, save the second point relied upon by appellant to the effect that without Fellows' testimony there is not enough to establish plaintiff's claim.    That is a question of fact, pure and simple.

II. It appears that Wood, the cashier, died by his own hand at a time when the bank was found to be insolvent.  A receiver was appointed for the bank and this receiver dis-

**2. Estates of Decedents: claims: evidence.** covered, in going over the assets, the Fellows notes.    At the time these notes were made Fellows was not worth to exceed $5,000.    No security was taken from Fellows for this large amount of his paper.    Alexander Wood had no knowledge of the Fellows notes until after the receiver had been appointed and the cashier, Wood, did everything he could to conceal them, not only from his partner but from others.    They were not kept with the other assets of the bank.    The cashier was speculating upon the board of trade, evidently in Fellows' name, for when drafts came from commission merchants of Chicago drawn upon Fellows, he (Wood) would pay them.    The Fellows notes were kept in a package marked " George D. Wood, Personal," and the clerks of the bank were instructed not to let Alex. Wood look into the matter of these notes.    At one time when the cashier was about to go away for awhile he instructed his clerks not to allow any drafts on Fellows to go to protest, that he had looked into the matter and thought there would be no drafts upon him during his (Wood's) absence. Fellows had some actual business relations with the bank, but in each instance security was demanded and received for *bona fide* loans.    After the cashier had paid these drafts by commission men, or brokers, of the city of Chicago, Fellows would go to the bank and sign notes for the full amount thereof.    No money was received from or paid out by Fellows. All this was done by Geo. D. Wood.    At one time Wood stated to an employé, in response to an inquiry as to whether

he was to pay any more of the Fellows' drafts, that "he guessed he would have to." When Alex. Wood visited Colfax, George D. Wood would keep him away from the bank, and the employés were instructed not to let him go over the books. At one time the cashier wrote this significant letter to Fellows: "Put on stop order if necessary." At another time he telegraphed in the name of his bank to a commission house in Chicago, "Will honor draft on Henry Fellows to amount of $5,000." Once when George D. Wood was in Chicago he telegraphed an employé telling him to take his private notes, put them in an envelope, and place them in the bottom of the safe, marked, "Private papers of George D. Wood." This was done because Geo. D. thought his partner might be coming, and was in anticipation of his visit to the bank. This is practically all the testimony in the case save that from Fellows, and in our opinion it shows not only the grossest negligence and want of common honesty, but a deliberate and fraudulent abstraction of the moneys of the bank without the consent of Alexander Wood, the partner, with deliberate intent to deceive and defraud him. George D. Wood, if alive, should be held liable to the bank for the amount of money paid on the Fellows' drafts and for which the notes were taken, and now that he is dead the amount thereof should be established as a claim against his estate.

III. George D. Wood, in addition to being liable to his individual creditors, was also liable to the creditors of the bank, and if this were a case where a receiver was seeking to establish the rights of firm creditors against

3. PARTNERSHIP: marshalling of assets: rights of firm creditors.

assets in the hands of the administrator of George D. Wood's estate, we should have one for application of the doctrine of marshaling assets. But that is not the situation here. Were the bank a going concern and Geo. D. Wood alive, he, Wood, would personally owe the amount of his abstractions therefrom. This would not be a partnership, but an individual liability although indirectly partnership creditors would profit there-

from. It is the liability of the debtor that we should look to in order to determine whether or not the doctrine of marshaling applies. In the case given by way of illustration, Wood's liability would be clearly individual and not because of his membership in the banking firm. The fact that Wood is dead and that the bank is in the hands of a receiver does not change this rule, especially where fraud is established, as in this case. Here the recovery is against Wood or his estate because of his personal and individual liability for fraud and the doctrine of marshaling does not apply.

Counsel for defendant have cited a number of cases in support of their contention, but none of them go to the extent claimed. Indeed they support the rule here announced. It may be that if the bank, in good faith, had loaned Geo. D. Wood the amount of money which he fraudulently abstracted, the rule contended for would apply. But that is not the situation here. The testimony plainly shows that the money was not only negligently and carelessly, but fraudulently, taken from the bank. In such cases no court of respectability has held that the doctrine of marshaling applies. On the contrary, beginning with the declaration of Lord Thurlow in *Ex parte Lodge,* 1 Ves. Jr. 166, and of Lord Eldon in *Ex parte Harris,* 1 Rose, 129, and ending with the latest authorities and text-writers upon the subject, it is held that if a managing partner fraudulently abstracts money from the firm, the firm or its representative may share with his individual creditors in his estate and its assets, and in competition with them. Bates on Partnership, vol. 2 (1st Ed.) section 839. And it is not necessary to show that the individual private estate had been augumented by the transaction. Indeed some of the cases go to the full extent of holding that, even if the liability be contractual, the doctrine of marshaling does not apply. *Bird v. Bird,* 77 Me. 499 (1 Atl. 455). We need not go to that extent in the present case. It is enough for us to hold to the general rule that when one member of a firm fraudulently abstracts some of its assets a representa-

tive of that firm may share *pari passu* with the individual creditors of the delinquent member. Indeed there may be cases where they might, under the doctrine of constructive trust, take all.

We have gone over the record with care, and find no error. The judgment is therefore *affirmed*.